UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-10116-CIV-ALTMAN

**CHRISTOPHER EUGENE VALDEZ**,

    *Plaintiff*,

*v.*

**SHERIFF RICK RAMSEY** and
**DIRECTOR KEENA ALLEN**,

    *Defendants.*

_____/

## ORDER

Our Plaintiff, Christopher Eugene Valdez, is a prisoner at the Monroe County Detention Center in Key West, Florida. He's filed a civil-rights complaint under 42 U.S.C. § 1983 against the Sheriff of Monroe County, Rick Ramsey, and the director of the jail's Programs Department, Keena Allen, for their roles in designing and implementing a policy for outgoing legal mail that "strip[s] Plaintiff of his right to engage in protected communications and his right to access the courts with freedom of speech." Complaint [ECF No. 1] at 6. Without addressing the merits of the Complaint, we find that Valdez has failed to exhaust his administrative remedies at the Monroe County Detention Center. We therefore **DISMISS** the Complaint *without* prejudice.

### THE FACTUAL ALLEGATIONS

Valdez is a pretrial detainee facing multiple felony charges in Case Nos. 19-CF-000543 and 22-CF-000055 in the Sixteenth Judicial Circuit Court in and for Monroe County, Florida.[1] Valdez is

---

[1] Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Ibid.* "The reason for this caution is that the taking of judicial notice

representing himself in those criminal cases. *See* Complaint at 2 ("Plaintiff was granted by the [state court] on August 26, 2022 his legal right to proceed *pro se* in his criminal proceedings."). According to Valdez, the Monroe County Detention Center has a policy that requires inmates to "relinquish confidential legal mail to the courts to Director Keena Allen's staff in the Programs Department for mailing." *Id.* at 6. Valdez asserts that "[a]s it stands right now with Sheriff Rick Ramsey's legal mail policies anyone can read, copy, and intercept detainees outgoing legal mail. There is no law library or law clerk to handle inmate's legal mail in their presence of copying and mailing." *Id.* at 6–7 (errors in original).

Valdez claims that this policy has negatively affected his ability to mount a legal defense. Valdez says that he drafted six different motions between August 29, 2022, and October 12, 2022—all of which were placed "into the hands of numerous Monroe County Sheriff Deputies in the Programs Department for copying and mailing to the courts." *Id.* at 3. When Valdez appeared at a November 1, 2022 pretrial hearing, he learned that "not one of the Plaintiff's legal documents had reached their intended destinations"; in other words, neither the State Attorney's Office nor the state trial court had received copies of the motions Valdez had entrusted to the Defendants. *Id.* at 4. After this pretrial hearing, Valdez tried to submit another motion—specifically, a "Motion to Produce Exculpatory Evidence"—which he (again) handed to jail officials for copying and mailing. *Id.* at 6. As before, however, this motion "never reached the addresses it was addressed to." *Ibid.* Hoping for some redress, Valdez filed a grievance with the Programs Department, complaining that, once the jail's law

---

bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). We'll therefore allow this Order to serve as notice of our intent to take judicial notice of any documents filed on the state-court dockets in the following cases: *State v. Valdez*, No. 19-CF-000543 (Fla. 16th Cir. Ct. July 1, 2019); and *State v. Valdez*, No. 22-CF-000055 (Fla. 16th Cir. Ct. Jan. 25, 2022). If Valdez objects to this decision, he may note that objection **within 28 days** of this Order. But that objection must be **no more than 10 pages in length**.

2

library closed, he had nowhere "to go and have peace and quiet to write my motions[.]" *Id.* at 8. In its response to these grievances, the Programs Department confirmed that "all legal document[s] to be copied, case law request[s], and research goes through the Programs Department." *Ibid.* Valdez asks for $200,000 in compensation for this alleged violation of his constitutional rights. *Id.* at 2.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require, in relevant part, that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this

3

standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Courts may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Brutus v. Int'l Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)); S.D. FLA. L.R. 1.1 ("When used in these Local Rules, the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."). The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Inves., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ANALYSIS

Valdez contends that Sheriff Ramsay and Director Allen are promoting an unconstitutional policy relating to outgoing legal mail. Based on the allegations in the Complaint, prisoners like Valdez don't have access to a physical law library and are required to submit "case law request[s] and research" through the jail's Programs Department. Complaint at 8. Once the prisoner has prepared his legal materials, he must send his pleadings back to the Programs Department, which then copies and mails the documents to the appropriate recipient. *See id.* at 6. Valdez says that this policy is unconstitutional because it gives prison officials free reign to "read, copy, and intercept [his] outgoing legal mail" and because it interferes with his right to "engage in protected communications" with the court. *Id.* at 6–7. Beyond these general complaints, Valdez also claims that prison officials have repeatedly failed to serve the court and the State with copies of his pleadings. *Id.* at 6. We won't address the merits of these allegations today, though, because Valdez has unambiguously failed to fully exhaust his available administrative remedies.

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 ('PLRA')." *Jones v. Bock*, 549 U.S. 199, 202 (2007). One of the PLRA's bedrock provisions is the requirement that "prisoners [ ] exhaust prison grievance procedures before filing suit." *Ibid.*; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). If a prison system "provides a grievance procedure for its prisoners," the "inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure[.]" *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)). This exhaustion requirement is absolute and inflexible. Indeed, a prisoner must still "exhaust administrative remedies even where the

5

relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Normally, exhaustion is an affirmative defense that must be raised for the first time in a defendant's responsive pleadings. But a "complaint may be dismissed [*sua sponte*] for failure to exhaust if the lack of exhaustion appears on the face of the complaint." *Burns v. Warden, USP Beaumont*, 482 F. App'x 414, 416 (11th Cir. 2012) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). Valdez alleges that he filed a grievance with the Programs Department on November 29, 2022, asking: "How long is the library going to be closed because I need somewhere to go and have peace and quiet to write my motions?" Complaint at 8. The jail responded the next day: "We no longer have the law library, all legal document[s] to be copied, case law request[s], and research goes through the Programs Department." *Ibid.* Although Valdez apparently "requested a copy of this grievance" (which he never received), he never alleges that he took any further action to resolve this issue with jail officials. *Ibid.*

That's a problem because all inmates (including pretrial detainees) in Monroe County, Florida, must exhaust "the grievance procedure set out in the Monroe County Inmate Handbook." *Bruce v. Phelps*, 428 F. App'x 922, 923 (11th Cir. 2011). The Monroe County Bureau of Corrections provides for a three-step grievance process. *First*, the inmate must complete an "Inmate Request Form," which he must deliver to the "Grievance Coordinator." MONROE CNTY. BUREAU OF CORR. WRITTEN DIRECTIVES, *Inmate Communication—Inmate Request Forms* § 5.003 (Dec. 14, 2018), https://www.keysso.net/CGO-chap5. *Second*, "[i]f the inmate is dissatisfied with the first response, that inmate may file an appeal to the division supervisor within five working days of receipt of the response." *Ibid. Third*, if the inmate is *still* dissatisfied, he can "file an appeal to the supervisor responsible for that division with[in] five working days of receipt of the division supervisor's response" for a "final decision." *Ibid.* There's no time limit for filing a grievance. *Ibid.*

Valdez certainly completed the *first* step of this process by filing an initial grievance, but there's no indication that he then appealed the jail's initial adverse response to his grievance. *See* Complaint at 8. He's thus failed to exhaust his administrative remedies.

Valdez has also failed to exhaust in another meaningful way. While an inmate is not required to "name any particular defendant in a grievance in order to properly exhaust his claim," he must provide sufficient details about the incident to "alert[ ] prison officials to the problem and giv[e] them the opportunity to resolve it before being sued." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010) (citing *Jones*, 549 U.S. at 219). Unfortunately, in his grievance, Valdez complained about the closure of the jail's law library, *not* the jail's policy of copying outgoing legal mail. *See* Complaint at 8 ("How long is the law library going to be closed because I need somewhere to go and have peace and quiet to write my motions?"). Valdez has thus failed to properly alert prison officials to his concerns about the jail's legal-mail policy. *See Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) ("[T]he purpose of administrative exhaustion . . . is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." (cleaned up)).

* * *

Because Valdez hasn't exhausted his administrative remedies, we now dismiss the Complaint. *See Bingham*, 654 F.3d at 1175 ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint."). While Valdez might feel that the grievance process is a futile waste of time, the PLRA *requires* administrative exhaustion—even if the outcome feels preordained. *See Woodford*, 548 U.S. at 85. Once Valdez has exhausted his remedies—and assuming that Valdez's concerns aren't allayed—he can then file a new action in this Court.[2]

---

[2] Dismissing this case will not prejudice Valdez because his claims are still comfortably within the four-year statute of limitations for § 1983 claims. *Cf. Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) ("[When] an order has the effect of precluding plaintiff from refiling his claim due to the

We therefore **ORDER AND ADJUDGE** that the Complaint [ECF No. 1] is **DISMISSED without prejudice**. All pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on January 25, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Christopher Eugene Valdez, *pro se*

---

running of the statute of limitations the dismissal is tantamount to a dismissal with prejudice." (cleaned up)).